Robert P. **PETITTI**, Plaintiff, Appellant,

v.

**NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY,**
Defendant, Appellee.

No. 89–1804.

United States Court of Appeals,
First Circuit.

Heard Feb. 7, 1990.
Decided July 23, 1990.

Jeffrey Petrucelly, with whom Petrucelly & Nadler, P.C., was on brief, for plaintiff, appellant.

William J. McDonald, with whom Michael A. Morrison was on brief, for defendant, appellee.

Before BOWNES, TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

Robert Petitti ("Petitti") appeals from the decision of the United States District Court for the District of Massachusetts granting two summary judgments in favor of appellee the New England Telephone Company ("NET"). Petitti brought this action alleging sexual discrimination and retaliation under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e, *et seq.*[1]

## FACTS

Robert Petitti was first employed by NET in September, 1969 as a Level 1 Computer Systems Analyst in the Accounting Department. From 1969 to 1983, he held various Level 1 positions as well as various Level 2 positions on a temporary or "acting" basis. His job performance evaluations ("PEP") from 1977 to 1983 reflect mixed reviews. His performance in the acting Level 2 positions was reputed basically satisfactory and at times he was even found eligible for full promotion treatment.

---

1. The complaint also alleged a claim under Massachussetts law. Mass.Gen.L. ch. 151B, § 4. The state action, however, was not pressed by appellant, on appeal, thus we need not raise this issue. *Morales v. Ramírez*, 906 F.2d 784, 788 n. 4 (1st Cir.1990) (issues not briefed are waived).

In 1981, Petitti was found promotable, but his supervisor commented that he needed to be more flexible with co-workers, to organize and to plan his time better and to learn not to interrupt others. As of January, 1982, Petitti was determined ineligible for promotion because of his personal difficulties with both co-workers and supervisors.

At that point, appellant had already expressed his dissatisfaction with the fact that he had not been promoted and that he had been held as an acting employee for four years, contrary to company policy. Petitti complained to NET that its affirmative action plan, which had established a policy to promote more qualified women to higher level positions, was creating a blockage of white males at Level 2. This, Petitti alleged, impermissibly prevented him from becoming a permanent Level 2 employee.

In May, 1982, Petitti became an acting senior systems analyst and was transferred to the Time Share Administration Systems project. That month an interim evaluation prepared by Nancy Knowlton, who was the project manager at the time, rated him at "partial treatment" for promotion because of alleged difficulties in dealing with personnel. Two months later he was selected and recommended by the same project manager to become a permanent senior systems analyst on that project, but a written notation on the document states it was cancelled. At about this time, Petitti visited a psychiatrist due to the alleged pressures and the discrimination confronting him at work.

In December, 1982, after continuous requests and complaints, Petitti was transferred back to his permanent Level 1 management post as a systems analyst and was asked to take a seven week medical leave. While on leave, in February, 1983, Petitti entered NET premises using a false name and gained access to computer files showing seniority dates for other employees. After he returned to work with NET, in his next evaluation, dated March, 1983, he was again rated not promotable. This evalua-

tion included a lengthy description of examples of alleged insubordination.

In March, 1983, Petitti filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and in October, 1985, he filed suit in the district court, alleging discrimination and retaliation.[2] In November, 1987, after discovery was completed, appellant filed a Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure Rule 56 with respect to both of his claims. The trial court bifurcated the claims, and at that time NET moved for summary judgment on the discrimination claim and later filed another request for summary judgment on the retaliation claim. Appellant's oppositions to NET's motion for summary judgment were filed on different dates and the documents and evidence attached thereto are not the same. As such, the records before the district court vary for each motion. On July 6, 1989, the trial court entered judgments as to all claims, granting NET's requests. On appeal the two judgments will be dealt with *seriatim.*

## STANDARD OF REVIEW

■ Both denial and grants of summary judgment are reviewed *de novo. E.g., Idaho v. Hodel,* 814 F.2d 1288, 1292 (9th Cir.1987), *cert. denied,* 484 U.S. 854, 108 S.Ct. 159, 98 L.Ed.2d 114 (1987). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law." Fed.R.Civ.P. 56(c). Essentially, the inquiry to determine whether there is a genuine issue as to a material fact is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *see Lipsett v. University of Puerto Rico,* 864 F.2d

---

**2.** Defendant filed four complaints with the Massachusetts Commission against Discrimination.

The EEOC issued a Right to Sue letter on the first charge filed on March 18, 1983.

881, 886 (1st Cir.1988). In assessing the evidence, we will review the material presented in the light most favorable to the non-movant, and we must "indulge all inferences favorable to that party." *See Lipsett v. University of Puerto Rico*, 864 F.2d at 886; *Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1106 (1st Cir.1989). We will reverse a grant of summary judgment if there are any factual issues that need to be resolved before the legal issues can be addressed. *Lipsett v. University of Puerto Rico*, 864 F.2d at 895.

■ When intent is an issue, we have held that our review "will be most searching" since these questions are most suited for jury determinations. *Rossy v. Roche Products Inc.*, 880 F.2d 621, 624 (1st Cir. 1989). Nonetheless, we will not refuse to affirm, even in such cases, when the non-movant rests merely upon unsupported allegations and speculations. *See Méndez v. Belton*, 739 F.2d 15, 20 (1st Cir.1984). Therefore, the courts examining the evidence must insist that the party opposing summary judgment go beyond the pleadings, and by his or her "own affidavits, or by the 'depositions, answers to interrogatories, and admission on file' designate specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Lipsett v. University of Puerto Rico*, 864 F.2d at 895 (quoting *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

## DISCUSSION

### I. *Title VII Claims*

Title VII provides a cause of action for both discrimination and retaliation ʾcases.[3] *See Pullman–Standard v. Swint*, 456 U.S. 273, 285–86 n. 15, 102 S.Ct. 1781, 1788 n. 15, 72 L.Ed.2d 66 (1982). The seminal case on this matter, *McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), establishes the order of proof in both discrimination and retaliation cases for situations, like the instant case, where direct evidence of discrimination is lacking.

At firsthand, plaintiff must prove by a preponderance of the evidence a *prima facie* case of discrimination. When plaintiff succeeds in so doing, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employees' rejection." *Id.* at 802, 93 S.Ct. at 1824; *see also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1983). The existence of an affirmative action plan has been recognized as a nondiscriminatory rationale for an employer's decision. *Johnson v. Transportation Agency*, 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1980). We have established that even upon motion for summary judgment the employer's burden, however, is not one of persuasion as "the burden of persuasion on the ultimate issue of intent remains with the plaintiff at all times." *Lipsett v. University of Puerto Rico*, 864 F.2d at 899.

■ On appeal our role is not to second-guess the business decisions of an employer, nor to impose our subjective judgments of which person would best fulfill the responsibilities of a certain job. *Rossy v. Roche Products*, 880 F.2d 621, 625 (1st Cir.1989). As such, after the employer has proffered the nondiscriminatory rationale, plaintiff has the burden to persuade the court that these reasons were a pretext for discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *Loeb v. Textron Inc.*, 600 F.2d 1003, 1012 n. 6 (1st Cir.1979).

In *Lipsett* this court discussed the application of the *McDonnell Douglas* frame-

---

**3.** Title VII of the Civil Rights Act of 1964 prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ..." 42 U.S.C. § 2000e–2(a)(1).

With respect to the retaliation claim it provides, It shall be unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in any investigation proceeding or hearing under this subchapter. 42 U.S.C. § 2000e–3(a).

work in the context of a request for summary judgment on a sexual discrimination claim. There, we established that once plaintiff has the burden of proving pretext to discriminate, it becomes an issue of intent. A summary judgment will be rejected "when the plaintiff can point to specific facts" giving rise to an inference of a discriminatory intent. *Lipsett v. University of Puerto Rico*, 864 F.2d at 895. Intent to discriminate is a question of fact and we must leave this determination to the jury. *See Pullman–Standard v. Swint*, 456 U.S. 273, 287–88, 102 S.Ct. 1781, 1789–90, 72 L.Ed.2d 66 (1982).

### A. Discrimination Claim

■ Appellant claims he demonstrated that, within the statutory period, he was promotable and that adverse employment decisions were made against him because of his sex.[4] The trial court found, however, that the uncontroverted evidence showed that during the "[statutory] period from July 1982 to March 1983 [Petitti] was rated ineligible for promotion." Accordingly, the district court concluded that Petitti had not established a *prima facie* case of discrimination based on NET's failure to promote him.

The court further found that NET had an established affirmative action plan and that it had presented evidence to support its claim that Petitti's poor performance led to his return to his permanent Level 1 position. In particular, NET showed that during 1982 Petitti was having difficulties in dealing with his customers, his peers and his supervisors.

To oppose NET's motion for summary judgment, appellant presented his own affidavit alleging that NET's motivations were of a discriminatory nature, as well as the affidavit of Anne Morley, who supervised him between four and six weeks. Besides the affidavits Petitti also provided a series of documents (Management Personnel Requests or PR1).[5] Included amongst these documents is a copy of Petitti's cancelled PR1. Furthermore, of the documents presented, only six fall within the statutory period; four of these documents recommended males and only two recommended females.

Petitti presents no direct evidence of discrimination and therefore the *McDonnell Douglas* framework is appropriate. In order to prove a *prima facie* case under this standard the evidence must show 1) that the plaintiff is within a class protected by Title VII; 2) that plaintiff applied, and was qualified for the position for which the employer was seeking a replacement; 3) that despite plaintiff's qualifications he or she was rejected; and 4) that after plaintiff's rejection the position was filled or continued its efforts to fill, the position with someone with complainant's qualification. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802, 93 S.Ct. at 1824; *Cumpiano v. Banco Santander*, 902 F.2d 148, 154–55 (1st Cir.1990).

Upon review we examine only such evidence as was presented to the trial court. To defeat a motion for summary judgment, Petitti must do more than merely make the claim of discrimination. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548. Essentially, pursuant to the first three prongs of the *McDonnell Douglas* standard, in a discrimination claim alleging disparate treatment "the plaintiff must prove by a preponderance of the evidence that [he] applied for an available position for

---

**4.** Originally there was an issue as to the period for which plaintiff could claim. The district court properly stated, and both appellant and appellee agree, that Massachusetts is a deferral state. As such, a complainant is required to file discrimination charges with the EEOC within 240 days of the alleged discrimination. *Cajigas v. Banco de Ponce*, 741 F.2d 464, 467 (1st Cir. 1984). Because Petitti filed his first charge with EEOC on March, 1983, the EEOC requirement extends the relevant time period back to July 21, 1982.

**5.** The PR1 which he presented as the alleged official document demonstrating his own promotability, was a cancelled document. Furthermore, these documents had been previously determined not to be official evaluation forms but job requisition forms which describe vacant positions, the specific qualifications needed to fill the position, and possible candidates. *Anne Morley v. NET*, No. 82–1051–Z, slip op. at 4–6, 1987 WL 9910 (D.Mass. Apr. 14, 1987).

which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094 (footnote omitted). The fourth prong would require Petitti to show that he was not hired but for his gender.

The district court found that Petitti failed to show that he was qualified during the statutory period. It stated that the document (PR1) was not an official document, that it had been cancelled and that four to six weeks under Morley's supervision was not sufficient time to determine Petitti's competence or promotability. The evidence presented to the trial court, however, reveals that even if the district court would have determined that Petitti was promotable within the statutory period, the fact still remains that more men than women were considered for promotion, thus there is a strong inference that gender was not the reason for failing to promote Petitti and thus the fourth prong of the *McDonnell* test was not proven. Furthermore, appellant's affidavits fail to point out situations which would require a determination of whether discriminatory intent existed.

Because appellant failed to demonstrate a *prima facie* case of disparate treatment as a result of unlawful sexual discrimination, we need go no further and therefore we affirm the district court's granting of summary judgment on the discrimination case.

**B. Retaliation Claim**

█ The district court concluded that Petitti had established a *prima facie* case sufficient to permit an inference of a retaliatory motive. It found, however, that with respect to each alleged incident of retaliation, defendant had stated a legitimate, nondiscriminatory reason for the employment actions taken. *See Loeb v. Textron Inc.*, 600 F.2d at 1012 n. 5. Finally, it ruled that, although the employer's motivation for its personnel decisions was the only issue in dispute, plaintiff had not offered facts to establish pretext or retaliatory intent.

Under Title VII, in order to show a *prima facie* claim of retaliation the plaintiff must show:

[f]irst, protected participation or opposition under Title VII known by the alleged retaliator; second, an employment action or actions disadvantaging persons engaged in protected activities; and third, a causal connection between the first two elements that is a retaliatory motive playing a part in the adverse employment actions.

*Watts v. University of Delaware*, 622 F.2d 47 (3d Cir.1980) (citing *Hochstadt v. Worcester Foundation*, 425 F.Supp. 318, 324 (D.Mass.), *aff'd*, 545 F.2d 222 (1st Cir. 1976)). Other circuits have held that the success of a retaliation claim does not require that the conduct plaintiff opposed was in fact a Title VII violation. *Manoharan v. Columbia U. Col. of Phys. & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988). "[I]t is sufficient if the plaintiff has a reasonable belief that there is a Title VII violation." *Jennings v. Tinley Park Community*, 796 F.2d 962, 967 (7th Cir.1986), *cert. denied*, 481 U.S. 1017, 107 S.Ct. 1895, 95 L.Ed.2d 502 (1987); *Love v. RE/MAX of America Inc.*, 738 F.2d 383, 385 (10th Cir. 1984).

Upon review of the record, we agree with the district court that appellant was able to demonstrate a *prima facie* case, of retaliation. We find that appellant presented evidence that may demonstrate a sequence of events, during the statutory period, from which retaliatory intent could be inferred. Although appellee provided evidence of Petitti's poor performance and uncooperativeness as a legitimate reason for its decisions, we find that Petitti's evidence reveals an issue as to a material fact.

The record shows that Petitti demonstrated that co-workers found him to be a competent and cooperative employee. The affidavits also provided that while he was "acting" manager, Nancy Knowlton, who had less seniority and was at a lower salary grade, was considered for and appointed manager. He complained about this promotion. Thereafter, he was transferred to her department and placed under her su-

pervision, thus terminating his "acting" manager's position. Petitti states in his affidavits that he was returned to a Level 1 position after he questioned her as to why he had not been promoted. The affidavits and the record also show that Nancy Knowlton who negatively evaluated Petitti, was a weak manager and was eventually requested to resign from NET.[6]

Petitti's affidavits also state that, when he asked other superiors within the company why he had not been promoted, he was told that the company, because of affirmative action policies, needed to promote a woman before he could be promoted. The record shows that Pettiti continued to express to his superiors his belief that NET was discriminating against men, as well as to send letters questioning the company's inactiveness with respect to his lack of promotion.

In the instant case, although appellee presented as evidence of its non-discriminatory rationale, the existence of an affirmative action plan and Petitti's poor work performance, *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802, 93 S.Ct. at 1824, the burden of persuasion on the ultimate issue of intent still remains with the plaintiff. *Rossy v. Roche Products Inc.*, 880 F.2d at 624. This court has consistently held that determinations of motive and intent, particularly in discrimination cases, are questions better suited for the jury, "as proof is generally based on inferences that must be drawn, rather than on the proverbial 'smoking gun.' " *Id.* Without doubt, there is no smoking gun in this case.

Because, "[t]he inquiry in a Title VII case is whether the defendant intentionally discriminated against the plaintiff," *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 106 (1st Cir.1988), and in view of the record, we agree with the district court that motive is a decisive factor in this case. We differ, however, in that the district court found that appellant failed to produce facts that would defeat the summary judgment request.

In *Lipsett v. University of Puerto Rico*, 864 F.2d at 895, we stated that specific facts "—that is, names, dates, incidents, and supporting testimony—[if these give] rise to an inference of discriminatory animus, the dispute must be subjected to the fact finding process." While appellant does not provide direct evidence of a discriminatory related retaliation, we think he has proffered sufficient evidence to defeat a motion for summary judgment. *See Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1115 (1st Cir.1989). The framework established in *McDonnell Douglas* and its progeny "is essentially a method for ferreting out discriminatory animus where direct evidence of intent is lacking, ..." *Lipsett v. University of Puerto Rico*, 864 F.2d at 899. We think that there is a material issue as to whether Petitti remained in an "acting" position or whether he was treated as he was because his performance was poor or because of his activities and allegations in reference to NET's promotion policies. Indulging in all inferences favorable to appellant, we find that Petitti has succeeded in placing in issue the question of NET's motives. Accordingly, and because intent is an issue for the jury, we reverse the district court's decision as to the grant for summary judgment on the issue of retaliation, and remand the case for further proceedings consistent with this opinion.

## CONCLUSION

We affirm the district court's grant of summary judgment as to the sex discrimination claim. We reverse, however, on the retaliation claim for the reasons stated above.

*Affirmed* in part, *reversed* in part for further proceedings consistent with this opinion. No costs.

---

**6.** These facts, which may have also been sufficient to prove a *prima facie* discrimination case were not included in appellant's opposition to the request for summary judgment on the discrimination claim.