**Robert P. PETITTI, Plaintiff,**

v.

**COMMONWEALTH OF MASSACHU-SETTS DEPARTMENT OF MENTAL HEALTH, Defendant.**

**Civ. A. No. 92–10146–GN.**

United States District Court,
D. Massachusetts.

Nov. 12, 1993.

Robert P. Petitti, pro se.

Philip J. Holmes and Deborah S. Steenland, Asst. Attys. Gen., Government Bureau, Trial Section, Boston, MA, for the Com. of Mass. State Banking Com'n.

GORTON, District Judge.

Report and Recommendation accepted and adopted.

*REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 37)*

**August 25, 1993**

BOWLER, United States Magistrate Judge.

Plaintiff Robert P. Petitti ("plaintiff"), a former employee of the Department of Mental Health ("DMH"), filed this action *pro se* under 42 U.S.C. § 2000(e) *et seq.*, 29 U.S.C. § 621 *et seq.*, and Mass.Gen.L. ch. 151B on January 24, 1992. (Docket Entry # 1). In his complaint plaintiff alleges that defendant Commonwealth of Massachusetts Department of Mental Health ("defendant") discriminated against him on the basis of age and sex and that defendant eventually fired him in retaliation for filing charges with the Equal Employment Opportunity Commission ("EEOC") with respect to the alleged discrimination. (Docket Entry # 1).

On September 15, 1992, defendant filed a motion for summary judgment. (Docket Entry # 37). On October 14, 1992, plaintiff filed an opposition. (Docket Entry # 43). On July 22, 1993, this court held a hearing and took the motion (Docket Entry # 37) under advisement.[1]

*BACKGROUND*

For purposes of summary judgment, this court finds the following facts undisputed. Plaintiff was hired by defendant in October 1988 and was assigned to the Riverside Community Mental Health and Retardation Center Inc. ("Riverside"), where he worked in the day program at the Neponset River Center. (Docket Entry # 40). In December 1988, plaintiff received his first performance review, wherein he met expectations in all categories except one in which he exceeded expectations. (Docket Entry # 40, Exhibit B). Plaintiff disagreed with this review and noted on it that he felt he had exceeded the

---

**1.** The motion for summary judgment (Docket Entry # 37) was referred to this court for a recom- mendation on June 7, 1993.

job's requirements in all categories.[2] (Docket Entry # 40, Exhibit B). The evaluation recommended that plaintiff, his supervisor and the Director of Mental Health meet to discuss the performance review. (Docket Entry # 40, Exhibit B). The meeting never took place. (Docket Entry # 40, Exhibit B).

In February 1990, Robert Rundle ("Rundle"), Program Director at Riverside, filed a complaint (Complaint 004) against plaintiff with Ruth Harrigan ("Harrigan"), the DMH Area Director. (Docket Entry # 40, Exhibit C). The complaint alleged that plaintiff's methods of conducting group activity had caused unnecessary emotional distress to one of Riverside's clients. DMH investigated the incident and filed a report. (Docket Entry # 40, Exhibit D). Therein, DMH concluded that plaintiff had violated the client's rights and caused her mental harm. (Docket Entry # 40, Exhibit D).

In March 1990, a therapist and a second client each filed complaints against plaintiff. The therapist's report alleged that plaintiff had caused unnecessary emotional distress to her client. (Docket Entry # 40, Exhibit E). The second client complained (Complaint 005) that plaintiff encouraged the use of profane language within the unit at Riverside. (Docket Entry # 40, Exhibit G). Both of these complaints were investigated by DMH investigators and were found to be valid. (Docket Entry # 40, Exhibit H).

In the spring of 1990, plaintiff was transferred from the computer unit at Riverside to the maintenance unit. (Docket Entry # 40). The transfer did not result in any change in title, salary or benefits with respect to plaintiff. (Docket Entry # 40).

On July 24, 1990, plaintiff received a disciplinary report entitled "Written Verbal Warning" from Dwyla Angelos ("Angelos"), Director of Case Management, advising plaintiff that in the future he should follow Rundle's "protocol." (Docket Entry # 40, Exhibit R). On the same day, plaintiff received a second disciplinary report entitled "Written Warning" from Angelos for "raising his voice, using profane language and utilizing a threatening statement" (Docket Entry # 40, Exhibit S) towards Rundle during a supervision meeting.

In July 1990, plaintiff's performance was again reviewed and he received a "below expectations" rating in three of the four rated categories. (Docket Entry # 40, Exhibit M). On August 1, 1990, plaintiff sent a letter to Rundle citing this evaluation as "false and ... an attempt to discredit me." (Docket Entry # 40, Exhibit M–1).

In October 1990 four of plaintiff's colleagues wrote a letter to Harrigan, complaining about plaintiff's attitude and overall performance. (Docket Entry # 40, Exhibit N). Therein, they alleged that plaintiff was having a negative effect on staff morale and called for his dismissal.

In October 1990 Harrigan reviewed previous investigations which her department had conducted regarding complaints about plaintiff. Harrigan concluded that the allegations against plaintiff were well founded and substantiated. (Docket Entry # 40, Exhibit I). She wrote a confidential letter to Scott Bock ("Bock"), Executive Director of Community Support Systems, Inc., agreeing with the steps already taken regarding plaintiff, i.e., his transfer. She then recommended possible further disciplinary action if future complaints were received.

Plaintiff appealed Harrigan's decision to the Assistant Commissioner of DMH and then to the Commissioner of DMH. Both appeals were rejected. (Docket Entry # 40, Exhibits J and K). On November 1, 1990, plaintiff was suspended without pay for failure to comply with Riverside's policies. (Docket Entry # 40, Exhibit T). From November 26 to November 28, 1990, plaintiff was again suspended without pay, this time for leaving the worksite without permission. (Docket Entry # 40, Exhibit U).

In January 1991 plaintiff filed a complaint against Riverside with the Internal Affairs department of DMH. (Docket Entry # 40, Exhibit O). In that complaint, plaintiff alleged 12 examples of abusive behavior that Rundle perpetrated against various clients of Riverside. Following an investigation by DMH officials, DMH found that only one of

---

**2.** This court does not consider this evidence for the truth of its contents.

the alleged abuses could be established. DMH noted, however, that this one abuse was a "minor exception." (Docket Entry # 40, Exhibit Q).

On May 7, 1991, plaintiff received a formal written warning for failure to attend a community meeting at Riverside. (Docket Entry # 40, Exhibit V). In June 1991 DMH received another complaint, this time from a parent of a Riverside client. (Docket Entry # 40, Exhibit W–1). The parent was concerned that plaintiff had harassed her in public, criticized her handling of her son, made disparaging remarks about Riverside and improperly requested her home address and telephone number. (Docket Entry # 40, Exhibit W–1). As a result of this incident, plaintiff was suspended without pay for five days beginning July 2, 1991. (Docket Entry # 40, Exhibit X). On July 15, 1991, plaintiff was suspended without pay indefinitely, pending the outcome of an inquiry into allegations that he had telephoned the above parent at her home and had harassed her. (Docket Entry # 40, Exhibit Y). Following a hearing on September 4, 1991, plaintiff's employment was terminated. (Docket Entry # 40, Exhibit BB).

## DISCUSSION

Defendant moves for summary judgment (Docket Entry # 37) on the grounds that plaintiff fails to set forth a *prima facie* case of unlawful discrimination or retaliation. Defendant also moves for summary judgment on the grounds that it has set forth legitimate reasons for plaintiff's termination and that plaintiff fails to establish that those reasons are pretexts for unlawful discrimination or retaliation.

Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–2, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *see Lipsett v. University of Puerto Rico,* 864

F.2d 881, 886 (1st Cir.1988). Inferences are drawn in favor of plaintiff, the nonmoving party. *Space Master International, Inc. v. City of Worcester,* 940 F.2d 16 (1st Cir.1991); *Herbert W. Price v. General Motors Corporation,* 931 F.2d 162 (1st Cir.1991) (record viewed in light most favorable to nonmoving party).

In deciding whether a factual dispute is genuine, this court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *accord Aponte–Santiago v. Lopez–Rivera,* 957 F.2d 40, 41 (1st Cir.1992). A fact is "material" if it might affect the outcome of the suit under the governing substantive law. *Beck v. Somerset Technologies,* 882 F.2d 993 (5th Cir.1989) (citing *Anderson,* 477 U.S. at 242, 106 S.Ct. at 2505).

Although defendant need not produce evidence negating plaintiff's claims that there is a material issue in genuine dispute, *Kirby v. Cullinet Software, Inc.,* 721 F.Supp. 1444, 1448 (D.Mass.1989), it must affirmatively show that there is an absence of evidence to support plaintiff's (the nonmoving party's) case. *Celotex Corporation v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–4, 91 L.Ed.2d 265 (1986). "It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." *Id.* at 328, 106 S.Ct. at 2555 (White, J., concurring).

Defendant must therefore inform this court of the basis for its motion, i.e., the absence of a *prima facie* case of discrimination and retaliation. It must then identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, "which demonstrate the absence of a genuine issue of material fact." *Winter Hill Frozen Foods & Services, Inc. v. Haagen–Dazs Co.,* 691 F.Supp. 539, 542 (D.Mass.1988) (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552). Where, as in this case, the nonmoving party will bear the burden of proof on the issue at trial, "Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by his

own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 542 (quoting *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553).

Plaintiff alleges a violation of Title VII of the Civil Rights Act of 1964 in his complaint. Title VII provides a cause of action for both sex discrimination and retaliation.[3] *See Pullman–Standard v. Swint,* 456 U.S. 273, 287–88 n. 15, 102 S.Ct. 1781, 1789 n. 15, 72 L.Ed.2d 66 (1982). Plaintiff also alleges violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.,* and of Mass.Gen.Laws. ch. 151B, which provide causes of action for age discrimination.

■ Because the language of the ADEA is similar to that of Title VII, the First Circuit has relied on Title VII precedent in interpreting comparable ADEA provisions. *Rodriguez–Morales v. The Veterans Administration,* 931 F.2d 980, 983 (1st Cir.1991); *see Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979). Under ADEA and Title VII, the ultimate "factual inquiry" to be decided by the trial court is whether "the defendant intentionally discriminated against the plaintiff." *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)). Under the test adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), after the defendant articulates a nondiscriminatory reason, the plaintiff has the burden of showing that the proffered reason was a pretext for an underlying discriminatory purpose and that it "was not the true reason for the employment decision." *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

A. *Discrimination Claim*

■ Defendant asserts in its motion for summary judgment that plaintiff fails to make out a *prima facie* case of unlawful sex or age discrimination or retaliation. In order to establish a *prima facie* case of unlawful discrimination in a wrongful discharge case, the plaintiff must demonstrate that he was in a protected group; that he was performing his job at a level that met his employer's legitimate expectations; and that he was replaced by someone with roughly similar qualifications. *Connell v. Bank of Boston,* 924 F.2d 1169, 1172 (1st Cir.), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991).

■ Defendant offers the Affidavit of Ted Kirousis ("Kirousis") (Docket Entry # 40), Director of Community Programs and Case Management for the DMH, as proof that plaintiff was not performing his job at an appropriate level. The Kirousis affidavit chronologizes plaintiff's disciplinary history at Riverside and contains 29 exhibits. Included in these are disciplinary reports, performance reviews, complaints by other employees about plaintiff, warning notices, suspension notices, an investigator's report and DMH's termination letter to plaintiff. These exhibits are in the form of official documents, submitted by supervisors, fellow employees and clients of Riverside and they point to a pattern of below average performance on the part of plaintiff.

Defendant also furnishes memoranda regarding plaintiff's complaints to DMH's internal affairs department, reply letters intimating that plaintiff's claims are generally groundless, his appeals of investigations into complaints about him, letters from defendant to plaintiff addressing investigations that de-

---

**3.** Title VII of the Civil Rights Act of 1964 prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1).

With respect to the retaliation claim, Title VII provides:

It shall be unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this subchapter.
42 U.S.C. § 2000e–3(a).

fendant carried out concerning plaintiff's complaints and letters from defendant to plaintiff addressing investigations that defendant conducted into charges and complaints against plaintiff. (Docket Entry # 40). Taken together this court finds that the evidence offered is compelling. It is readily apparent that plaintiff was not performing at an adequate level. Defendant therefore satisfies its burden of affirmatively showing that there is an absence of evidence to support plaintiff's case.

Plaintiff offers two affidavits, his own and that of Sylvia Rose ("Rose"), to rebut this contention and demonstrate that he was in fact performing at an appropriate level. These affidavits, however, fail to "designate specific facts showing that there is a genuine issue for trial," *Winter Hill*, 691 F.Supp at 542, as required by Rule 56(e).

In plaintiff's affidavit he asserts that "I accomplished several projects for Riverside beyond my position description." These include: (1) successfully assisting Riverside's office administrator to develop her computer skills; (2) acquiring additional computers and equipment for Riverside; (3) taking over the creation of the Foxwood schedule; (4) assisting in creating an Apple Grant proposal; (5) assisting Riverside's staff in installing and learning about computers and (6) assisting Riverside's staff when they had difficulty using the computers. Plaintiff also claims that the Massachusetts Department of Employment ("MDE") determined that he legally qualified for unemployment compensation in the only hearing held "where I have had an opportunity to present my facts." Plaintiff goes on to state that during this time "my 89 and 90 EPRS reflected that I successfully [met] and exceed[ed] the [job's] requirements." (Docket Entry # 45). Finally, in Rose's affidavit, she details Rundle's abusive behavior towards her and plaintiff and characterizes plaintiff as "a quiet and respectful man." (Docket Entry # 44).

The assertions in these affidavits are insufficient for this court to establish plaintiff's acceptable performance for several reasons. First, plaintiff's list of projects "beyond my position description" is just that, "beyond" his job description. These projects are irrelevant for purposes of determining at what level plaintiff performed his assigned duties, and as a result this court will not consider them in evaluating plaintiff's performance.

Second, the MDE's determination that plaintiff legally qualified for unemployment benefits is irrelevant because the document provides no factual proof as to plaintiff's job performance. The appeal form states that MDE's original determination was overturned. It does not explain what MDE's original determination was nor does it state reasons for the original determinations being overturned. Therefore, this court cannot infer that the document establishes in any way that plaintiff was performing his job at an acceptable level at the time of his termination. As such it falls short of the specific factual proof that plaintiff needs to demonstrate.

Third, plaintiff's only viable assertion, i.e., that he met or exceeded the required performance level in 1989 and 1990 is not supported by factual proof. According to plaintiff's Employee Performance Reviews ("EPRS"), plaintiff's performance met, but did not exceed the appropriate level in 1989 (Docket Entry # 40, Exhibit B) and was below the appropriate level in 1990 (Docket Entry # 40, Exhibit M).

Finally, the Rose affidavit, though it details the shortcomings of Rundle, never establishes that plaintiff's job performance was acceptable. The closest she comes to such an evaluation is her assessment of plaintiff as "a quiet and respectful man ... isolated and treated very unfairly." This assessment similarly falls short of the specific factual proof that plaintiff's *prima facie* case requires.

The only verifiable factual evidence that this court can find in plaintiff's affidavit (Docket Entry # 45, Exhibits 2, 3, 4 and 9) suggests that plaintiff was not performing at an appropriate level. As such, this court agrees with defendant's argument that plaintiff has not met a required element of his *prima facie* case. Summary judgment is therefore appropriate on plaintiff's discrimination claims based on age and sex.

### B. Retaliation Claim

 Defendant further claims that plaintiff fails to establish a *prima facie* case of unlawful retaliation under 42 U.S.C. § 2000e–2(a), 3(a), 29 U.S.C. § 623(a) and Mass.Gen.Laws ch. 151B. Absent direct evidence, the *McDonnell Douglas* burden shifting framework is appropriate in retaliation as well as discrimination cases. Therefore, once the defendant has articulated a nondiscriminatory reason for terminating plaintiff, the plaintiff must show that (1) he engaged in a protected activity; (2) the employer took an adverse personnel action; and (3) a causal connection existed between the protected conduct and the adverse action. *Morley v. New England Telephone Company*, No. 82–1051–2, 1987 WL 9910, *7 (D.MASS. Apr. 14, 1987); *see Connell*, 924 F.2d at 1179; *Petitti v. New England Telephone & Telegraph Co.*, 909 F.2d 28, 33 (1st Cir1990). The fact that a plaintiff eventually proves unable to establish that the employer discriminated against him in the first place is not fatal to his *prima facie* case of retaliation. It is enough that the plaintiff had a reasonable, good faith belief that a violation occurred; that he acted upon it; that the employer knew of the plaintiff's conduct; and that the employer lashed out in consequence of it. *Mesnick v. General Electric Company*, 950 F.2d 816, 819 (1st Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *see Petitti*, 909 F.2d at 33; *Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988).

 There are many sources of evidence that can demonstrate retaliation in a way sufficient to pass the summary judgment hurdle. These include, but are not limited to, evidence of differential treatment in the workplace, *see, e.g., Sumner v. United States Postal Serv.*, 899 F.2d 203, 210 (2d Cir.1990); *Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1255 (2d Cir.1987), statistical evidence showing disparate treatment, *see, e.g., McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. at 1825–26, temporal proximity of an employee's protected activity to an employer's adverse action, *see, e.g., Rowlett v. Anheuser–Busch, Inc.*, 832 F.2d 194, 202 (1st Cir.1987); *Sumner*, 899 F.2d at 209, and comments by the employer which intimate a retaliatory mindset. Whatever the sources of his proof, in order to survive judgment as a matter of law, a plaintiff must present evidence from which a reasonable jury could infer that the employer retaliated against him for engaging in a protected activity. *Petitti*, 909 F.2d at 33; *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 458 (4th Cir.1989).

In support of summary judgment, defendant submits the Kirousis affidavit (Docket Entry # 40) which, as noted above, factually supports the allegations of plaintiff's poor performance and unacceptable behavior. The underlying burden therefore falls upon plaintiff to show that the termination of his employment arose as a result of his earlier complaints.

In reply, plaintiff provides the same two affidavits, his own (Docket Entry # 45) and that of Rose (Docket Entry # 44), in attempting to establish the existence of a causal connection. Neither of these documents, however, offers sufficient evidence of such a connection. In plaintiff's affidavit (Docket Entry # 45), he asserts that complaint 005 (Docket Entry # 40, Exhibit G) was filed on the same day that he complained to Bock that he was being "mistreated, harassed and discriminated against" by Rundle. He further asserts that no meeting was held to discuss his grievances and that when he met with Brian Devin of the Regional Office, he was "threatened and suspended."

As previously noted, the Rose affidavit (Docket Entry # 44) describes the deterioration of the relationship between plaintiff and Rundle. Therein, she asserts that plaintiff was "ostracized and not spoken to" and also that Rundle "made it clear to staff that if they wanted to survive and have a job they had better avoid" plaintiff. Although these averments make it clear that "adverse personnel action" was taken, there is no factual evidence in either affidavit to suggest that the action taken resulted from plaintiff's lodging a complaint with the EEOC.

At his deposition, plaintiff admits that the only basis for his retaliation claim is the fact that no action was taken as a result of his complaints. He is unable to offer any additional information to support his allegation

that the lack of action taken following his complaints and the subsequent complaints against him were motivated by retaliation.

Moreover, at his deposition (Docket Entry # 41) plaintiff stated that DMH did not become aware of his discrimination claim until he received his July 1990 performance evaluation. Plaintiff's difficulties, however, started prior to this point in time. The complaints filed against plaintiff by Riverside's clients were filed in February and March 1990, prior to plaintiff's performance review. The modification of plaintiff's duties which resulted from these complaints also took place in the spring of 1990, several months before the 1990 performance review. It is therefore clear that defendant took this action unaware of any complaint to the EEOC and thus could not have been motivated by retaliation.

 In addition, plaintiff remained employed by DMH for nearly a year after he lodged his complaint of discrimination. Furthermore, during that year DMH received myriad complaints about plaintiff from individuals at Riverside including co-workers and clients. Defendant correctly asserts that the pattern of events does not indicate that plaintiff's discharge was causally connected to his complaints. Moreover, it is well established that engaging in a protected activity does not provide immunity for subsequent unsatisfactory performance and misconduct. *Mesnick*, 950 F.2d at 828.

 As stated above, the assertions contained in the affidavits fail to establish a causal connection between plaintiff's complaints and defendant's alleged retaliation. Plaintiff, therefore, fails to establish a *prima facie* case of retaliation. The mere fact that

his complaints were rejected is insufficient for an inference of retaliatory intent. Summary judgment is therefore appropriate with respect to this claim.

### C. *Remaining Claims*

Defendant asserts that plaintiff's pendant state law claim under Mass.Gen.L. ch. 151B must be dismissed in the event this court dismisses plaintiff's federal claims. Defendant additionally argues that plaintiff's state law claim must be dismissed because it is barred by the Eleventh Amendment. This court need not reach the question of whether the Eleventh Amendment bars plaintiff's state court claim because this court declines to exercise supplemental jurisdiction in accordance with 28 U.S.C. § 1367.

> Section 1367 provides in relevant part that:
>
> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a)[4] if— ... (3) the district court has dismissed all claims over which it has original jurisdiction.

Therefore, having dismissed plaintiff's federal claims on summary judgment, this court declines to exercise supplemental jurisdiction over plaintiff's state law claim.

### CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[5] that defendant's motion for summary judgment (Docket Entry # 37) be **ALLOWED**.

---

**4.** Section 1367(a) of 28 United States Code provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

**5.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986).