Jose L. DIAZ Plaintiff,

v.

John ASHCROFT, Attorney General; United States Department of Justice Defendants.

No. CIV. 02–2834(CCC/GAG).

United States District Court, D. Puerto Rico.

June 30, 2004.

José L. Díaz, pro se, Bayamón, for Plaintiff.

H.S. García, U.S. Attorney, Ginnette Milanés, Assistant U.S. Attorney, San Juan, for Defendant.

## OPINION & ORDER

GELPI, United States Magistrate Judge.

This is an action for compensatory and punitive damages brought by the plaintiff, Jose L. Diaz ("Diaz"), acting *pro se*, against John Ashcroft, the Attorney General of the United States, and the United States Department of Justice pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1] as amended by the Civil Rights Act of 1991. Diaz's complaint alleges he was denied a position with the United States Marshall Service ("USMS") because of his national origin. (Docket No. 1). Before the Court are the parties' cross-motions for summary judgement. (Docket Nos. 19 and 33).

## I. *Factual Background*

On January 15, 1998, the USMS sought to fill six (6) GS–1811 5/7 Deputy U.S. Marshall vacancies in the District of Puerto Rico. According to USMS procedure, candidates for Deputy U.S. Marshall positions in Puerto Rico are selected from two (2) different pools of eligible candidates— the national register, which contains approximately 12,000 eligible applicants, and applicants listed on the "geographic certificate." (*See* Docket 33, p. 14). Applicants listed on the geographic certificate must be fluent in both Spanish and English and are eligible for positions only in Puerto Rico. *Id.*

Before the USMS extends an offer of employment, a Deputy Review Panel (DRP) reviews the candidate's file, which contains an application and a standard background report. After DRP review, the panel votes whether to approve or reject an applicant's file, and whether to offer employment to "approved" applicants. (*See* Docket 33, p. 7). The group of applicants reviewed by the DRP for the January 1998 GS–1811 5/7 Deputy U.S. Marshall vacancies were selected from

both the national register and the geographic register. (*See* Docket 19, p. 7)

On January 22, 1998, Diaz received a letter from the USMS requesting an interview. Diaz was assigned to the geographic register. On or about March 9, 1998, Diaz completed his interview and filled out additional paperwork. (*See* Docket 33, p. 4).

During the week of May 18, 1998, the DRP reviewed files of persons who were interviewed, including Diaz's file. At the conclusion of the DRP's review, Diaz's application did not receive "approval" because members of the DRP thought it prudent to submit Diaz's file for a more in-depth investigation. (*See* Docket 33, p. 15).

On May 22, 1998, five (5) individuals were selected to fill the GS–1811 5/7 vacancies.[2] Those individuals were: 1) Geoffrey Davis, American male, entrance exam score of 91, qualified under national register; 2) Richard Kelly, American Male, entrance exam score of 90, qualified under national register; 3) Christopher Barfield, American male, entrance exam score of 90, qualified under the national register; 4) Manuel Varela, Spanish Male, entrance exam score of 73, bilingual in English and Spanish, qualified under the geographic register; 5) Andres Jiménez, Venezuelan male, entrance exam score of 84, bilingual in English and Spanish, qualified under the geographic register. (*See* Docket 33, p. 15). It is uncontested that the delay caused by the DRP's submission of Diaz's application for further investigation resulted in Diaz's ineligibility for the June 1998 academy class.

---

**1.** Title 42 of the United States Code, section 2000e–2(a) states in relevant part: "It shall be an unlawful employment practice for an employer ... to discriminate against any individual because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a).

**2.** One (1) of the six (6) vacant GS–1811 5/7 positions was reclassified as a management position.

## II. *Summary Judgment Standard* [3]

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). When deciding a motion for summary judgment, the court must view the record in the light most favorable to the party opposing summary judgment, including all reasonable inferences in the nonmoving party's favor. *See id.* "If, after canvassing the material presented, the district court finds *some* genuine factual issue remains in the case, whose resolution one way or the other *could* affect its outcome, the court must deny the motion." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added). "The movant's burden is particularly rigorous when the disputed issue involves questions of motive or intent, since in these cases jury judgments about credibility are typically thought to be of special importance." *Lipsett v. Univ. of P.R.,* 864 F.2d 881, 895 (1st Cir.1988). In a discriminatory employment action case, a plaintiff, "will rarely, if ever, be able to produce a 'smoking gun' that provides direct, subjective evidence of an employer's animus." *Stepanischen v. Merchs. Despatch Transp. Corp.,* 722 F.2d 922, 928 (1st Cir.1983). "Rather, a plaintiff must try to convince the fact-finder to draw an inference from a broad array of circumstantial and often conflicting evidence ...." *Id.* Even in these cases, however, the Court will not

refuse to grant summary judgment in favor of the defendant if the plaintiff's claim rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." *Suárez v. Pueblo Int'l Inc.,* 229 F.3d 49, 53 (1st Cir.2000) (citing *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)).

## III. *Legal Analysis*

The facts alleged in Diaz's complaint give rise to two separate causes of action: failure to hire because of racial and/or national origin animus and retaliation for engaging in protected activity. Specifically, Diaz alleges that he was not hired by the USMS in June 1998 because he is Puerto Rican. He also alleges, with reference to the June 1998 allegation, that he was not selected for a U.S. Marshall position because his application contained information regarding an EEOC complaint he filed against the Fort Lauderdale Police Department. Defendants argue they are entitled to summary judgment on both claims because Diaz has failed to present sufficient *prima facie* evidence of discriminatory intent.

### A. *Failure to Hire Based on Racial Discrimination*

Title VII specifically prohibits an employer from "fail[ing] or refus[ing] to hire any individual because of such individual's race, color, religion, sex, or national origin." Section 703(a)(1), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

### 1. *Diaz's Prima Facie Case*

Defendants' argue that Diaz has not met the requisite *prima facie* burden because "he was not similarly situated to the three (3) American males who were hired in

---

**3.** The Court notes that all parties have complied with Local Rules 56(b) and (c).

June 1998." (*See* Docket 33, p. 4). Because defendants' do not attack a specific prong of plaintiff's *prima facie* case, the Court will review the proffered evidence *in toto.*

"Quite commonly in discrimination cases—especially in hiring—the potential plaintiff knows only that he was not hired and has no specific evidence as to why this occurred. Possibly in response to this dilemma, the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), adopted what it called a *prima facie* case approach by which an employer charged with racial discrimination in hiring could be made to explain its purported reason for its refusal to hire the plaintiff." *Meléndez–Arroyo v. Cutler–Hammer de P.R. Co., Inc.*, 273 F.3d 30, 33 (1st Cir.2001). In sum, the Court stated that the potential employee need at the outset show only that he or she met these conditions: that he or she was a racial minority, applied for and was qualified for the position, was rejected and the position remained open. *McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. 1817.

■ Nowhere in the Court's opinion does it state that the plaintiff must demonstrate that he was "similarly situated" to the person(s) hired. Diaz is of Puerto Rican decent, he applied for the position, he qualified for said position under the geographic register, and he was not selected for the position. (*See* Docket 19, p. 6). In fact, no Puerto Rican was selected to fill a GS–1811 5/7 position in the district of Puerto Rico in 1998. (*See* Docket 33, p. 15).

Although Diaz alleges discrimination based on his Puerto Rican origin, the defendants focus their defense only on the three (3) American males that were selected. (*See* Docket 33, p. 6). The two (2) other persons selected, Manuel Varela and

Andres Jimenez, also listed on the geographic register, were not Puerto Rican. In addition, Varela, whom is of Spanish decent, received a lower examination score than Diaz. In analyzing whether a plaintiff has failed to meet the *prima facie* showing of discrimination, the courts have reiterated that the burden of making out a *prima facie* case is "not onerous." *Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see Rivera–Aponte v. Restaurant Metropol # 3, Inc.*, 338 F.3d 9, 11 (1st Cir.2003) ("not burdensome"); *Zapata–Matos v. Reckitt & Colman, Inc.*, 277 F.3d 40, 44 (1st Cir.2002) ("low *prima facie* showing"); *Villanueva v. Wellesley College*, 930 F.2d 124, 127 (1st Cir.1991) ("quite easy to meet"). Under this standard, Diaz has proffered sufficient *prima facie* evidence of failure to hire based on racial and/or national origin discrimination.

### 2. USMS's legitimate nondiscriminatory reason for Diaz's Rejection

Absent direct evidence of discrimination, once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate (not prove) a legitimate nondiscriminatory reason for the employee's rejection. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. "If the defendant articulates a lawful reason for its action, the presumption created by the *prima facie* case is dissolved," and the plaintiff then has the "burden to persuade the court that these reasons [given] were a pretext for discrimination." *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 31 (1st Cir.1990).

■ USMS argues that it did not hire Diaz in January 1998 because the DRP needed to further investigate his background. (*See* Docket 33, p. 8). According to defendants, this delay caused Diaz's application "to be shelved," and other qualified candidates were hired because there was an immediate demand to fill the posi-

tions. *Id.* Defendants argue that it is within the DRP' authority to decide which files require further review. *Id.* Under *Burdine,* Defendants have articulated a legitimate nondiscriminatory reason for failing to hire Diaz. 450 U.S. at 253, 101 S.Ct. 1089.

### 3. *Diaz's Response to USMS's nondiscriminatory reason*

At this point, Diaz must present evidence that discredits USMS's legitimate nondiscriminatory reason, specifically, that the need for further background information was merely an excuse not to hire Diaz because he is Puerto Rican. *Petitti,* 909 F.2d at 31. Diaz responds by stating that his application contained information about an EEOC report he filed against the Fort Lauderdale Police Department a few years earlier. (*See* Docket 19, p. 3). This, Diaz asserts, is the real reason why the DRP decided to bury his file and ultimately reject his application. *Id.* Although this is probative evidence of pretext, Diaz must point to evidence that demonstrates discriminatory motive based on race/national origin, not discriminatory motive based on protected activity. He has failed to do so here. Failure to hire based on racial discrimination is a separate and distinct cause of action from failure to hire because one has engaged in protected activity. Without more, this Court must **GRANT** summary judgment in favor of the defendant with respect to Diaz's claim of racial/national origin discrimination.

### B. *Failure to Hire in Retaliation for Engaging in Protected Activity*

■ It is also unlawful for an employer to retaliate against an employee for initiating an action under Title VII. 42 U.S.C. § 2000e–3(a).[4] To establish a *prima facie* case of retaliation, Diaz must prove by a preponderance of the evidence that: "(1) he engaged in protected conduct under Title VII; (2) he suffered an adverse employment action; and (3) the adverse action is causally connected to the protected activity." *White v. N.H. Dep't of Corr.,* 221 F.3d 254, 262 (1st Cir.2000) (quoting *Hernandez–Torres v. Intercontinental Trading, Inc.,* 158 F.3d 43, 47 (1st Cir.1998)); *Hoeppner v. Crotched Mountain Rehab. Ctr.,* 31 F.3d 9, 14 (1st Cir. 1994); *see also Kearney v. Town of Wareham,* 316 F.3d 18, 23 (1st Cir.2002). An adverse employment action for retaliation purposes includes, "demotions, disadvantageous transfers or assignments, denial of transfers, or refusals to hire." *Morgan,* 536 U.S. at 116–117, 122 S.Ct. 2061. Where, as here, there is no direct evidence of retaliation, this Court may analyze a retaliation claim under the familiar burden-shifting framework set forth in *McDonnell Douglas. See Jeffries v. State of Kansas,* 147 F.3d 1220, 1231 (10th Cir. 1998) (applying McDonnell Douglas framework to a claim of retaliation).

### *Diaz's Prima Facie Case*

■ According to Diaz, the USMS rejected his application because his background report mentioned a prior EEOC complaint he had filed against the Fort Lauderdale Police Department. (*See* Docket 19, p. 7). Although this allegation sounds retaliatory in kind, the USMS is not the agency against whom Diaz filed the EEOC complaint. This Court is hard pressed to find federal case law that supports Diaz's theory, specifically, that a

---

4. Title 42 of the United States Code, section 2000e–3(a) states in relevant part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title."

potential employer cannot legally seek to investigate [5] and/or refuse to hire an applicant because he or she filed an EEOC complaint against another employer.[6] Accordingly, this Court must **GRANT** summary judgment in favor of the defendant with respect to Diaz's retaliation claim.

### C. Diaz's Failure to File Within 90 Days

The Court also notes that Diaz failed to file this cause of action within the requisite ninety (90) day period following the receipt of his right to sue letter. 42 U.S.C. § 2000e–5(f)(1); *Rice v. New England Coll.,* 676 F.2d 9, 11 (1st Cir.1982). "In the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." *Rice,* 676 F.2d at 11. Thus, it appears that Diaz's action is also time-barred under 42 U.S.C. § 2000e–5(f)(1).

### IV. Conclusion

**WHEREFORE,** for the reasons stated herein, the defendants' motion for summary judgment (Docket No. 33) is **GRANTED** and plaintiff's motion for summary judgment (Docket No. 19) is **DENIED.**

**SO ORDERED.**

---

5. The Court also notes that the USMS should be granted considerable leeway to investigate the backgrounds of potential USMS employees. Deputy U.S. Marshalls are responsible for securing the safety of federal judges and other federal officers, as well as custodying federal inmates, thus, thorough investigation of potential employees should be encouraged.

---

6. The Court of Appeals for the Sixth Circuit recognized such an action in *Christopher v. Stouder Mem'l Hospital,* but provided protection only where the former EEOC respondent is one "who significantly affects [the plaintiff's] access" to other employment opportunities. 936 F.2d 870, 875 (6th Cir.1991). This is not the case here.