**Victor Omar PORTUGUES–SANTA, Plaintiff,**

v.

**B. FERNANDEZ HERMANOS, INC., Defendant.**

**Civil No. 05–1527 (FAB).**

United States District Court, D. Puerto Rico.

May 15, 2009.

Ralph Jr. Vallone–Jr., Ralph Vallone, Jr. Law Office, San Juan, PR, for Plaintiff.

Alfredo Fernandez–Martinez, Delgado & Fernandez, Jenyfer Garcia–Soto, Sepulvado & Maldonado, PSC, San Juan, PR, for Defendant.

**OPINION & ORDER**

FRANCISCO A. BESOSA, District Judge.

On August 18, 2005, plaintiff Victor Omar Portugues–Santa ("Portugues") filed a verified amended complaint in which he claimed that the defendant B. Fernandez Hermanos, Inc. ("BFH") discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964. (Docket No. 15) Portugues also alleged supplemental commonwealth law claims pursuant to 28 U.S.C. § 1367. (*Id.*) On January 16, 2007 BFH filed a motion for summary judgment. (Docket No. 130) Portugues opposed BFH's motion for summary judgment (Docket No. 155), and BFH replied to Portugues's opposition. (Docket No. 165) On June 16, 2008, the Court granted a motion requesting that facts stipulated by the parties in their initial scheduling conference be considered as part of the record at summary judgment. (Docket No. 201; *see also* Docket Nos. 32, 174, 182, 187) On March 10, 2009, the Court granted a motion to strike certain exhibits relied upon by Portugues in his opposition to summary judgment. (Docket No. 208; see also Docket Nos. 173, 181 & 187) On March 19, 2009, the Court summarily denied BFH's motion for summary judgment. (Docket No. 209)

Pending before the Court is BFH's motion for reconsideration of the Court's order denying summary judgment (Docket No. 213), Portugues's opposition (Docket No. 221), and BFH's reply. (Docket No. 224) For the reasons provided below, the Court **GRANTS** defendant BFH's motion for reconsideration (Docket No. 213) and therefore **VACATES** the Court's order summarily denying summary judgment (Docket No. 209) and instead **GRANTS** BFH's motion for summary judgment. (Docket No. 130)

**I. Motion for reconsideration**

The Federal Rules of Civil Procedure "do not recognize a 'motion for reconsideration' in *haec verba.*" *See, e.g., Lavespere v. Niagara Mach. & Tool Works Inc.,* 910 F.2d 167, 173 (5th Cir.1990), *cert. denied* 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131, *abrogated on other grounds by Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075–76 (5th Cir.1994). BFH moves for reconsideration of the Court's denial of its summary judgment motion without citing

to any federal rule or case law. Portugues opposes BFH's motion without citing to any legal authority of his own regarding motions for reconsideration. Those motions are usually decided under Federal Rules of Civil Procedure 59(e) or 60(b). *See, e.g., In re Sun Pipe Line Co.*, 831 F.2d 22, 24 (1st Cir.1987) ("Notwithstanding that [appellant] did not denominate any particular rule as the springboard for its reconsideration motion, it is settled in this circuit that a motion which asked the court to modify its earlier disposition of a case because of an allegedly erroneous legal result is brought under FED.R.CIV.P. 59(e)."); *see also, United States v. $23,000 in United States Currency*, 356 F.3d 157, 165 (1st Cir.2004) (noting that motions requesting modification of a court's earlier disposition of a case because of an erroneous legal result are usually brought under FED.R.CIV.P. 59(e), but utilizing the trial court's Rule 60(b) framework for the motion for reconsideration). Neither rule applies at this juncture of the case, however, because both rules apply only to final judgments. *See* FED.R.CIV.P. 59(e); FED.R.CIV.P. 60(b); *United States v. Baus*, 834 F.2d 1114, 1118 (1st Cir.1987). Judgment as used in the Federal Rules is defined as "any order from which an appeal lies." FED.R.CIV.P. 54(a). The Court's denial of defendant's summary judgment motion does not dispose of plaintiff's claims nor does it fall under a special carve-out that would allow for an immediate appeal of the denial of the motion. *See, e.g., Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 6–7 (1st Cir.2005) (collecting cases in which certain pretrial orders are deemed immediately appealable and thus falling under FED.R.CIV.P. 59(e)); *c.f. also, Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143–44, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (discussing judgments that may be appealed even though they are not complete and final judgments). Because Rules 59(e) and 60(b) do not apply, the decision *as to* whether or not to reconsider the denial of BFH's summary judgment motion falls squarely within the plenary power of the court that issued the initial ruling, this Court. *See Campos v. Puerto Rico Sun Oil Co.*, 536 F.2d 970, 972 n. 6 (1st Cir. 1976); *Lewis v. Grinker*, 660 F.Supp. 169, 170 n. 1 (E.D.N.Y.1987); *Johnson v. Township of Bensalem*, 609 F.Supp. 1340, 1342 (E.D.Pa.1985); *Above The Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983); *see also, John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 90–91, 42 S.Ct. 196, 66 L.Ed. 475 (1922) ("if an interlocutory decree be involved, a rehearing may be sought at any time before final decree, provided due diligence be employed and a revision be otherwise consonant with equity").

The Court shall exercise its discretion in favor of entertaining the motion for reconsideration. Admittedly, there is no record upon which to compare the Court's earlier denial of the summary judgment motion with the Court's present ruling on the motion for reconsideration because the Court denied the summary judgment motion without providing an explanation. Nonetheless, the Court hereby avers that it committed an error of apprehension when it first ruled on BFH's motion for summary judgment, and as such this is one of the rare occasions when a motion for reconsideration serves a valuable function. *See Above The Belt, Inc.*, 99 F.R.D. at 101.

## II. Local Rule 56

Local Rule 56 requires parties to support a motion for summary judgment with a statement of material facts. L.CIV.R. 56(b). It also requires a party opposing summary judgment to submit an opposing statement of facts that either admits, denies or qualifies the movant's proposed

facts, and it allows that party to submit its own statement of additional proposed facts. L.Civ.R. 56(c). Both rules require the parties to submit "separate, short and concise" statements of fact in numbered paragraphs that are supported by pin cites to admissible evidence. L.Civ.R. 56(b), (c) & (e). As a general principle, parties may not include legal arguments or conclusions in their statement of facts. *See MVM Inc. v. Rodriguez*, 568 F.Supp.2d 158, 163 (D.P.R.2008); *Juarbe–Velez v. Soto–Santiago*, 558 F.Supp.2d 187, 192 (D.P.R.2008). Plaintiff Portugues has not complied with this rule.

Time and again plaintiff makes conclusory statements embodying legal principles in his proposed statement of facts. These statements are patently insufficient to carry the plaintiffs' burden of showing disputed issues of material fact at summary judgment because they do not provide any detail as to what occurred in this case. These statements also conflict with the purpose of local rule 56, an "anti-ferreting" rule, because they leave the court to laboriously pore through page after page of attached exhibits. *See generally, Calvi v. Knox County*, 470 F.3d 422, 427 (1st Cir. 2006) ("Such local rules are useful devices for focusing a district court's attention on what is—and what is not—genuinely controverted."); *Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 33 (1st Cir.2001).

For example, plaintiff states that the defendant "willfully and recklessly discriminated against Plaintiff and discharged him because of his black race." (Docket No. 158, p. 26, ¶ 24) The plaintiff then states that employees of the defendant repeatedly commented on the plaintiff's sexual orientation. (*Id.*) As an initial matter, the plaintiffs' sexual orientation-based claim was dismissed prior to the filing of the summary judgment papers in this case, making the second sentence irrelevant to the disposition of this case. (Docket No. 93) Even if the sexual orientation based claim had not been dismissed, the second sentence should have been included in a separate paragraph so that the support for the first second and the second sentence could be easily distinguished. More to the point, the first sentence is a legal conclusion dressed up with language relating to the supposed intent of the defendant (a corporate entity) which is irrelevant to surviving summary judgment. The plaintiff then attempts to support his proposed facts with numerous cites to his own deposition testimony as well as that of others. These cites are to specific facts such as that: (1) the plaintiff was the only director at BFH who did not have a laptop, or (2) the plaintiff's request to take a trip was denied, or (3) the plaintiff was not provided with his performance bonus immediately. These specific facts are not shorthand for the plaintiffs' conclusion that he was discharged because he was black. The way to get these facts into the record is to state them as such: the plaintiff was the only director at BFH who did not have a laptop, etc. The proposed factual statement should then be supported by the record pin cite that actually supports the statement. The citation should not be mixed with other citations that do not support the specific proposed fact.

Legal conclusions, on the other hand, belong in the plaintiffs memorandum of law. That is the document in which the plaintiff may argue that specific facts such as BFH's failure to assign the plaintiff a laptop, when considered alongside other specific proposed facts, are sufficient for the purposes of surviving summary judgment to show that the acts ascribed to BFH were motivated by a racially discriminatory animus.

Rather than cataloguing the plaintiffs' repeated failures to provide separate,

short and concise statements of proposed facts supported by pin cites to relevant parts of the record, the Court chooses simply to include in the factual background of this opinion only the well supported and relevant facts proposed by the plaintiff (as well as those proposed by the defendant). *C.f., Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir.2007) ("In the event that a party opposing summary judgment fails to act in accordance with the rigors that such a rule imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated"); *Cosme–Rosado v. Serrano–Rodriguez*, 360 F.3d 42, 45–46 (1st Cir.2004). The Court rejects the conclusory legal statements included in the plaintiffs' statement of proposed facts. The Court shall not "ferret" through the record to fill in the gaps in the factual narrative resulting from the plaintiff's failure to state specifically relevant information concerning what transpired during plaintiff's tenure at BFH.[1]

## III. Background

### A. BFH hires Portugues

BFH is a distribution company that operates a wholesale facility in Bayamon, Puerto Rico. In addition to distributing food products, BFH distributes wine, beer and liquor. On May 15, 2000, Portugues, a Puerto Rican individual who identifies himself as having black skin, began work at BFH as the Director of Sales and Marketing for Beer and Liquor. The position offered a compensation package of $85,000.00 annual salary, health insurance, retirement plan, life insurance, long term disability insurance, a company car, a Christmas bonus, and a performance bonus linked to annual sales. He was offered the position a month earlier after two interviews with Jose Teixidor ("Teixidor"), BFH's then General Manager and Executive Vice President. (In May of 2003, Teixidor became President of BFH and BFH hired Angel Vazquez to replace Teixidor as General Manager.) Despite his title, Portugues was only fully responsible for marketing liquor (and not beer). His responsibility in regards to beer marketing was limited to the "Bud Light Alternative" campaign. This campaign, developed in the United States, was brought to Puerto Rico at the initiative of Portugues. The campaign was focused upon promoting Anheuser Busch products within the gay community. BFH provided a budget for the campaign that matched funds provided by Anheuser Busch. While the record is not entirely clear, it appears that responsibility for marketing beer was at some point entirely assigned to Alfredo Del Valle, an individual who the parties identify as white. (After all, Del Valle held the title of "Sales & Marketing Director Beer" just prior to the moment that both he and Portugues were terminated from their employment with BFH.)

During Portugues's employment at BFH, his immediate supervisor was BFH's vice president of beer and liquor, Guy Yokotake. Portugues identifies Yokotake as Hawaiian, and perhaps also as black.[2] Yo-

---

**1.** The Court also has not included those proposed facts from the defendant that it finds irrelevant to its analysis. It appears, for instance, that the parties disagree as to whether or not Portugues performed well, and to what extent he was responsible for the sale (or the lack of sale) of beer. Because the resolution of these factual disputes does not bear upon the Court's adjudication of the motion for reconsideration, the Court has not included either party's proposed facts concerning these issues.

**2.** The following is an excerpt from Portugues's deposition:

Q. How about in the liquor and beer department that you worked, were there any other

kotake himself noted that his skin was darker than Portugues.[3] Regardless, both Portugues and Del Valle reported to Yokotake in the BFH organizational structure, and Yokotake in turn reported to Teixidor. Bob Hoffman ("Hoffman"), Yokotake's peer as vice president of sales & marketing in the area of provisions, also reported to Teixidor.

## B. BFH fires Portugues

BFH terminated Portugues from his employment on February 11, 2004. He was notified of his termination by Eva Nuñez, the Director of Human Resources. Upon notification of his termination from employment, Portugues asked if he could be placed in another position or at a lower salary. His request was refused by BFH.

Upon Portugues's termination, his position was eliminated, as part of a company wide reorganization that occurred in order to reduce costs. As part of this reorganization, BFH also terminated the employment and eliminated Del Valle's position of Director of Marketing for Beer. Two new positions were created as part of the reorganization: Brand Manager Liquors and Brand Manager Beer. These positions were set at a lower salary and had some but not all of the functions that had been held by Portugues and Del Valle. Portugues identifies Jorge Marrero, the Brand Manager for Liquor, as a white-skinned person and alleges that BFH replaced him with Marrero.

Although the record is somewhat hazy as to the exact details of each change at BFH, it is apparent the terminations of Portugues and Del Valle were not the only

changes. Hoffman resigned in May of 2003. At about that same time, Teixidor became President of BFH and he switched Yokotake out of liquor and beer to the position of vice president of special projects.[4] Yokotake resigned sometime thereafter. BFH eliminated the vice president positions that had been held by Yokotake and Hoffman and created the positions of vice president for sales and vice president for marketing. In so doing, BFH eliminated the division between provisions on the one hand and liquor and beer on the other hand. In August, 2003 BFH hired Mario Somoza ("Somoza") as its vice president of marketing, and Reinaldo Aponte ("Aponte"), as vice president of sales. In addition to eliminating the director positions held by Portugues and Del Valle, BFH had also earlier eliminated a director position within provisions that had been held by Patsy Ramirez.[5]

## C. Portugues did not follow BFH's complaint procedure

When he began his employment, Portugues received a copy of BFH's Employee Manual. Among other things, the manual states that BFH is an equal opportunity employer, and it provides for a complaint procedure for employees who face discrimination in the work place. Posters stating that BFH is an equal opportunity employer and that it does not discriminate on the basis of an individual's skin color were also posted in the BFH cafeteria. Nonetheless, Portugues did not make any formal or informal complaint to the human resources department that he had faced discrimination on the basis of

---

black employees, based on your understanding of what a black individual is?

A. I believe that the only person was Mr. Yokotake, who was Hawaiian.

(Docket No. 134, Exh. 7, p. 103)

**3.** *See* Docket No. 150–3, p. 24.

**4.** *See* Docket Nos. 174–2, p. 2 & 150–3, p. 12.

**5.** *See* Docket Nos. 134, Exh. 7, p. 124; 130–3, Exh. 22, pp. 8–10.

his skin color. He also failed to make a formal or informal complaint to any of his supervisors that he had been discriminated against on the basis of his skin color. Portugues stated that he made no such complaints to human resources or to his supervisors because one of his supervisors, Teixidor made what he considered to be discriminatory comments to him concerning his sexual orientation.

### D. Indignities suffered by plaintiff in the workplace

In general, Portugues alleges that he was discriminated against because he was not provided with "a proper work place." Specifically, Portugues states that he was the only director who did not have a laptop computer, although he did have a desktop computer in his office.[6] Portugues also stated that he requested the opportunity to travel to an unnamed convention and that his request was denied but the request of an unnamed "white" person was approved.[7]

Portugues also claims that the failure to hire a "brand manager" who reported to him was a form of discrimination. He states that he requested a brand manager prior to the appointment of Somoza as marketing vice president and Aponte as sales vice president in 2003 but was not provided with one. Once Somoza and

Aponte were appointed by August of 2003, they took over the hiring of a brand manager in the area of Liquor (as well as in the area of Beer). Portugues contrasts his experience with that of Lara Rodriguez,[8] when she was a brand manager in provisions. He stated that she was provided with two junior brand managers when she asked for them as well as an assistant.[9]

Rodriguez, Portugues complains, also benefitted from ideas and prospective clients that he developed because Somoza somehow took the ideas and prospective clients from Portugues and gave them to Rodriguez.

Portugues alleges that another form of mistreatment he endured was the late payment of his performance bonus on two occasions. He alleges that all of the other top management employees received their performance bonuses immediately after BFH received their sales amounts. This allegation, however, conflicts with the testimony of Aponte, the vice president of Sales, who stated that he has not received his bonus in a timely fashion.[10]

Lastly, Portugues states that in four years at BFH he received no evaluations and he received no salary increase.

### E. BFH did not make Portugues a vice-president

As referenced above, in May of 2003 two vice presidential positions were created,

---

**6.** After sharing an office for one to two months, Portugues moved to a private office. The private office was only slightly smaller than the office of his supervisor, Guy Yokotake. The office was larger than the office of anyone else in the sales department, although none of the other individuals in sales were a part of upper management, as was Portugues. Portugues was provided with a desktop computer and furniture.

**7.** BFH notes that Portugues did, in fact, take an authorized trip to Chile to visit a prospective supplier. This trip was paid for by the supplier.

**8.** Portugues identifies Rodriguez as being a black-skinned individual. (Docket No. 134, Exh. 7, p. 101)

**9.** Portugues also noted that the two junior brand managers were white and that they received laptops.

**10.** Yokotake also testified that his bonus was not paid on time when he was at BFH. (Docket No. 150–3, p. 27–28)

one for marketing and the other for sales. These positions were filled in August of 2003 (by Somoza and Aponte). Portugues did not apply for either position. He states that he did not apply for the positions because they were never posted on the company bulletin boards. The employee handbook directs that job openings "may be posted on the bulletin boards." It also directs that "it will be the employees' responsibility to verify the availability of these positions and to complete any necessary forms."

### F. Race related comments in the work place

Portugues alleges that BFH employees frequently made negative racial references to him such as "negro con Mercedes Benz," "negro con partidura" and "negro-blanco."[11] Portugues also alleges that upper management at BFH was aware of the comments made towards and about Portugues and yet upper management did nothing to stop the comments. Portugues fails, however, to present admissible specific or particularized evidence concerning the comments about him other than on a few occasions. These few incidents do not indicate that upper management was aware of the comments nor do the few details provided reveal the identity of the speaker.

Portugues testified that he was told that someone in the "promotions" department of BFH referred to him as "negro con Mercedes Benz." Portugues does not know the identity of the speaker nor when the comment was made. Portugues testified that he heard someone in the promotions area shout "negro con partidura," but he did not know the identity of the speaker.

Portugues alleges but fails to prove that his supervisors were present for any of the racially related comments that he references.[12]

### G. Title VII administrative requirements

Portugues filed a charge of employment-related racial discrimination against BFH before the EEOC on August 2, 2004. The EEOC issued its dismissal notice on March 7, 2005. Portugues sought his Right to Sue Letter on May 7, 2005. He thereafter filed the complaint in this case on May 18, 2005.

## IV. Summary Judgment Standard

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. The Rule states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Santiago–Ra-*

---

**11.** In their exhibits and pleadings the parties fail to translate these three terms (i.e., "negro con Mercedes Benz," "negro con partidura" and "negro-blanco"). The Court's unofficial translation of the terms is as follows: "black guy with a Mercedes Benz," "black guy who parts his hair," and literally "a white, black guy" or perhaps depending upon the colloquial turn of phrase, "an oreo."

**12.** Plaintiff mentions that Teixidor referred to him as a "gay director." The Court earlier dismissed plaintiffs' claims for discrimination based upon sexual orientation (or perceived sexual orientation). This comment is the only evidence referenced by plaintiff showing a supervisor making or witnessing a challenged remark. This particular remark is irrelevant to the issue of whether Portugues worked in a racially hostile work environment. Plaintiff did not state that his supervisors were present when he heard someone shout "negro con partidura."

mos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir.2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine." Material means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is genuine when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor."

*Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

## V. Discussion

### A. Introduction

Title VII of the Civil Rights Act of 1964 prohibits discrimination against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a)(1). Title VII provides a cause of action for both discrimination and retaliation. *Petitti v. New England Telephone & Telegraph Co.*, 909 F.2d 28, 31 (1st Cir.1990). In this case, Portugues has not alleged a retaliation claim. He has claimed, however, that he was discriminated against when he was not promoted to one of two newly created vice president positions and when he was terminated from his employment. He further claims that he was subject to a hostile work environment during the time that he worked at BFH.

### B. The failure to promote claims are time barred

As an initial matter, the Court must disregard two of the purported bases for Portugues's discrimination claim for failure to comply with the filing deadline of Title VII: BFH's failure to promote him to either of two available vice presidential positions at the company. In states which have enacted employment discrimination laws like Puerto Rico ("deferral states"), plaintiffs must file charges of unlawful race based discrimination within 300–days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e)(1);

*Fontanez–Nunez v. Janssen Ortho LLC*, 447 F.3d 50, 55 (1st Cir.2006); *American Airlines, Inc. v. Cardoza–Rodriguez*, 133 F.3d 111, 122 (1st Cir.1998) (noting that Puerto Rico is a deferral state while adjudicating an ADEA claim); *Lawton v. State Mut. Life Assurance Co. Of America*, 101 F.3d 218, 221 (1st Cir.1996); *Cardona v. Aramark Services of Puerto Rico, Inc.*, 9 F.Supp.2d 92, 97–98 (D.P.R.1998) (applying the 300–day limit to a Title VII gender discrimination case in Puerto Rico). To determine the timeliness of a complaint, the date of challenged employment practice or action must be identified. In this case Portugues claims that he was unlawfully not promoted to either of two vice president positions. The record is uncontested that these two positions opened in May of 2003 and were filled by August of 2003. Thus, even taking the last possible day that either of these positions was actually filled by another individual as the date when the unlawful practice occurred (rather than any earlier moment when Portugues was not officially notified of the positions), August 31, 2003, more than 300 days elapsed before Portugues filed his EEOC complaint on August 2, 2004. Thus the court finds that Portugues's claim of race based discriminatory non-promotion is time-barred.[13]

### C. Applying the *McDonnell Douglas* framework to Portugues's claim of discriminatory termination from employment

■■■ In a Title VII case, discrimination may be shown through direct evidence or through the cumulative effect of indirect evidence of the employer's motivation. *See Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 909 (1st Cir.1988); *c.f., Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101–02, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). Where a plaintiff produces direct evidence of discrimination, he or she may prevail without proving all of the elements of a *prima facie* case under the *McDonnell Douglas* framework. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

■■■ Where there is evidence of both discriminatory and non-discriminatory animus, and the plaintiff requests it, the court may evaluate the evidence through the mixed-motive framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). *See Moron–Barradas v. Dep't of Educ. of the Commonwealth of Puerto Rico*, 488 F.3d 472, 480 (1st Cir.2007) (*citing Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 31 (1st Cir.2003)). Under this framework, a "plaintiff's burden is tempered so that [he or] she need prove only that the discriminatory action was a *motivating factor* in an adverse employment decision." *Patten v. Wal–Mart Stores East, Inc.*, 300 F.3d 21, 25 (1st Cir.2002). Under the mixed-motive analysis, codified at 42 U.S.C. § 2000e–2(m), the plaintiff need only establish that the employment decision was motivated in part by a discriminatory animus. Under this framework, however, "the employer has a limited affirmative defense that does not absolve it of liability, but restricts the remedies available to a plaintiff." *Desert Palace, Inc.*, 539 U.S. at 94, 123 S.Ct. 2148. To avail itself of the affirmative defense, the employer must "demonstrat[e] that [it] would have taken the same action in the

---

**13.** Notably, Portugues has not raised the claim that BFH's failure to promote him to either of the available vice president positions constituted a "continuing violation" of Title VII. *See, e.g., Cardona*, 9 F.Supp.2d at 98. He does make, however, a substantially similar argument that the Court shall address below: that the failure to promote was but one of numerous acts directed against him that constituted a hostile work environment.

absence of the impermissible motivating factor." 42 U.S.C. § 2000e–5(g)(2)(B).

Where there is no direct evidence of discrimination, the court may apply the *McDonnell Douglas* framework. Because Portugues has adduced no evidence of direct discrimination and because he has not utilized the mixed motive analysis in his briefs, the Court shall apply the *McDonnell Douglas* framework to the claim that BFH fired him because it discriminated against him on the basis of his race.

To prove a *prima facie* case of discrimination under this framework, the plaintiff must establish by a preponderance of the evidence (1) that the plaintiff is within a protected class; (2) that his employer took an adverse action against him; (3) that he was qualified for the employment he held; and (4) that his position remained open or was filled by a person whose qualifications were similar to his. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Douglas v. J.C. Penney Co.*, 474 F.3d 10, 13–14 (1st Cir.2007); *Petitti*, 909 F.2d at 32. The defendant may then rebut the plaintiff's *prima facie* case by providing a legitimate, non-discriminatory reason for the challenged employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant provides a legitimate, non-discriminatory reason, then to defeat summary judgment the plaintiff must demonstrate that the reason was pretextual. This may be done by showing that a discriminatory reason more likely motivated the defendant, or by showing that the proffered reason lacks credibility. *Id.* at 256, 101 S.Ct. 1089.

█ Plaintiff fails to state a claim under the *McDonnell Douglas* framework because he fails to make a *prima facie* case and also because—even assuming *arguendo* that he stated a *prima facie* case—he has not rebutted BFH's proffered legitimate reason for terminating his employment. BFH does not dispute that Portugues satisfies the first two elements of a *prima facie* case (that Portugues was fired from his employment and that he is black). The Court shall also assume that the third factor is satisfied, that Portugues was qualified for the employment he held. Portugues fails to show, however, that his position remained open or was filled by another person with qualifications similar to his own.

To the contrary, BFH has provided evidence that Portugues's position was eliminated. Prior to terminating Portugues and Del Valle, the directors of sales and marketing for alcohol and beer respectively, BFH hired two people in positions senior to both Portugues and Del Valle as part of an internal restructuring. Somoza was hired as vice president of marketing and Aponte was hired as vice president of sales. This restructuring removed a prior separation that had existed internally at BFH between "provisions" on the one hand and liquor and beer on the other. After firing Portugues and Del Valle, BFH hired a brand manager for liquor and a brand manager for beer. Portugues alleges that Marrero, a white person and the brand manager for liquor, replaced him. BFH asserts, however, that Marrero only took on some of Portugues's responsibilities and that he receives a lower salary (as does the brand manager for beer) than Portugues did as a director. Portugues does not provide any evidence to contradict or qualify BFH's showing on this point. He also does not make any showing as to how Marrero's qualifications compare with his own. He only asserts, in conclusory terms, that BFH's restructuring is a sham. Accordingly, the Court holds that Portugues has failed to show the fourth element of a *prima facie* case, that the

position was held open or occupied by someone with qualifications similar to those of Portugues.

■ Even if the Court were to assume that Portugues made a proper showing as to the fourth element, it would still hold that Portugues failed to expose BFH's legitimate reason for terminating his employment as pretext for discrimination. BFH asserts that the termination of Portugues's employment occurred as part of a restructuring. BFH has shown that at the same time that it terminated the employment of Portugues, it also terminated the employment of Del Valle. Following the termination of both individuals, lower ranking positions were created for brand managers in the areas of liquor and beer. Also, prior to Portugues's termination from employment, his former supervisor, Yokotake, the vice president of sales and marketing for beer and liquor, left his employment as did the vice president of sales and marketing for provisions, Hoffman. Following those departures, BFH changed the structure of the company so that there was a single vice president for sales covering provisions, liquor and beer as well as a single vice president for marketing covering provisions, liquor and beer. Despite all of these changes, Portugues alleges that the restructuring is merely a pretextual explanation for the true reason he was terminated from his employment: race based discrimination. Portugues fails, however, to provide any evidence or logical explanation to show that the restructuring at BFH is pretext for discrimination. His conclusory allegation that the restructuring is a pretext does nothing to undermine the credibility of BFH's proffered legitimate reason.

Moreover, as discussed in greater detail in the following section addressing Portugues's hostile work environment claim, Portugues provides weak evidence of prejudice. This evidence does not show that BFH was more likely motivated by discrimination than by an internal restructuring. Portugues shows that an unknown person made unflattering racial references to him on two occasions and he shows one instance of superficially disparate treatment because Portugues was not provided with a laptop computer. These facts do not cause the Court to doubt BFH's proffered legitimate reason for terminating Portugues's employment, because the challenged remarks did not come from a decisionmaker (or someone in a position to influence a decisionmaker) and the failure to issue Portugues a laptop without anything more is de minimis evidence of disparate treatment. *See, Straughn v. Delta Air Lines, Inc.,* 250 F.3d 23, 36 (1st Cir. 2001) (holding that "mere generalized 'stray remarks,' arguably probative of bias against a protected class, normally are not probative of pretext absent some discernible evidentiary basis for assessing their temporal and contextual relevance."); *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 10 (1st Cir.1990) (noting in an ADEA case that "[t]he biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case."); *see also, Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (stating that an employer would be entitled to judgment as a matter of law where "the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."); *Kosereis v. Rhode Island,* 331 F.3d 207, 214 (1st Cir.2003) (holding that one incident providing a slight suggestion of pretext was insufficient to survive summary judgment); *Zapata–Matos v. Reckitt & Colman, Inc.,* 277 F.3d 40, 47 (1st Cir.2002) (same). Ac-

cordingly, the Court finds that Portugues has not shown that BFH's preferred legitimate reason for terminating his employment was pretextual. This is a second basis for rejecting Portugues's individually actionable claim that he was terminated from his employment on the basis of his race.

### D. Hostile Work Environment claim

 To prove a hostile work environment, Portugues must show that he was subjected to severe or pervasive harassment that materially altered the conditions of his employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (*citing Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (additional citation omitted)). The harassment must be both objectively and subjectively offensive such that a reasonable person would find it hostile or abusive, and the victim must also perceive the conduct in question to be hostile or abusive. *Faragher*, 524 U.S. at 787, 118 S.Ct. 2275 (*citing Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). There is no "mathematically precise test" for determining if conduct reaches the threshold of being so severe or pervasive that it creates a work environment abusive to employees. *Harris*, 510 U.S. at 22–23, 114 S.Ct. 367. To determine if a reasonable person would find a work environment hostile or abusive, a court must consider the totality of the circumstances. *Id.* at 23, 114 S.Ct. 367. "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* "The thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace

and actual harassment." *Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir.2005) (citation omitted). For example, " 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275 (citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).

As summarized by the First Circuit Court of Appeals, to succeed on his hostile work environment claim Portugues must prove: (1) that he is a member of a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on his membership in a protected class; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and create an abusive work environment; (5)that the objectionable conduct was objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established. *Torres–Negron v. Merck & Co.*, 488 F.3d 34, 39–40 (1st Cir.2007); *Douglas*, 474 F.3d at 15; *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001). Below the Court shall focus on only the fourth and fifth factors outlined above.

 Portugues alleges that all of the harms he suffered form part of the same unlawful employment practice; in other words that they are all part of the same pattern of racially hostile incidents that occurred in his work environment. This allows Portugues to resuscitate his claim that BFH failed to promote him because acts that occurred prior to the 300–day filing deadline must still be considered as part of a hostile environment claim so

long as such acts form part of the same collective unlawful employment practice. *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117–21, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Thus in evaluating Portugues's claim of a hostile work environment the Court shall analyze the following circumstances: (1) Portugues was not promoted to either of two vice president positions within BFH that were created while he worked at BFH; (2) Portugues was terminated from his employment; (3) Portugues was not provided with a laptop; (4) Portugues's request to travel to a convention was denied; (5) Portugues was not provided with a brand manager who worked for him; (6) Somoza passed on ideas and prospective clients developed by Portugues to Rodriguez; (7) Portugues received his performance bonus late on two occasions; (8) Portugues never received a salary increase nor was he officially evaluated over a period of four years; and (9) unnamed persons (or possibly a single person) referred to Portugues as "negro con Mercedes Benz," and "negro con partidura." These varied complaints certainly represent a long list of indignities suffered by Portugues, and they are the type of proffered evidence that could be sufficient to survive summary judgment if properly presented. *See White v. N.H. Dep't of Corr.*, 221 F.3d 254, 260–61 (1st Cir.2000) (finding commonplace sexual conversations and jokes (some of which were at the plaintiffs expense) combined with disparate treatment sufficient to withstand summary judgment in a sexual harassment case). In this case, however, the connection between each of the complained of incidents is less than obvious, as is the allegedly discriminatory nature of all but two of the acts complained of.

The only acts challenged by Portugues that facially suggest any kind of race-based animus in and of themselves are the references to Portugues as "negro con Mercedes Benz," and "negro con partidura." Portugues has not adduced any particularized evidence consistent with his allegation that these remarks were made often. At his deposition, Portugues said he had been told that an unspecified person referred to him as a "negro con Mercedes Benz." He also remarked that he once heard an unknown person shout "negro con partidura" from the promotions area of the office. This amounts to two incidents in which an unknown person used race-related language to refer to Portugues. Portugues does not attribute this language to any of his supervisors nor has he shown that any of them were witnesses to the use of such language. He himself has admitted that he did not utilize the company's complaint procedure to report the use of such language in the workplace. Thus, on the record before the Court, there is no reason for his supervisors to have been aware of the challenged conduct. Moreover, while the language used might very well have embarrassed Portugues, just as it may have been premised upon unsavory racial stereotypes, it was not overtly aggressive or excessively derogatory. The racial references were not combined with any physical activity nor were they made in a context that interfered with Portugues's ability to do his job. Therefore, the Court finds that the challenged comments do not rise to the level of being so severe or pervasive that they altered the terms or conditions of Portugues's employment. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment' ")(quoting *Far-*

*agher,* 524 U.S. at 788, 118 S.Ct. 2275); *Pomales v. Celulares Telefonica, Inc.,* 447 F.3d 79, 83–84 (1st Cir.2006) (holding that a male supervisor grabbing his crotch and gesturing in the direction of a female employee was not sufficient to state a hostile work environment claim); *Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 783 (1st Cir.1990) ("[A]n isolated sexual advance without more, does not satisfy the requirement that an employee asserting a cause of action for hostile environment discrimination demonstrates an abusive environment.").

The racial comments, of course, are not the only evidence relied upon by Portugues in this case, and they may not be viewed apart from the other proffered evidence. *O'Rourke,* 235 F.3d at 730 ("Courts should avoid disaggregating a hostile work environment claim"). The problem for Portugues is that he provides barely any additional evidence suggestive of discriminatory animus in addition to the comments relating to his skin color. Portugues fails to flesh out the evidence that he puts forward as suggestive of disparate treatment, and without some meaningful measure to evaluate the proposed evidence of disparate treatment, two instances of race based language are not enough to survive summary judgment.

■ Taking the proposed evidence of disparate treatment in reverse order from the acts listed above, the Court shall explain how each instance as presented fails to provide a basis for the Court to infer that Portugues was treated differently from his similarly situated co-workers on the basis of his race. Portugues states that he never received a salary increase or an official evaluation during the four year period that he worked at BFH. This certainly appears somewhat unusual. Po-

rtugues does not take the necessary second step, however, to show that other employees of BFH, situated similarly to Portugues but not pertaining to his same protected class, did receive reviews and salary increases over the same period of time. *See Kosereis,* 331 F.3d at 214 ("To successfully allege disparate treatment, a plaintiff must show 'that others similarly situated to him in all relevant respects were treated differently by the employer.' ") (quoting *Conward v. Cambridge School Committee,* 171 F.3d 12, 20 (1st Cir.1999)).

■ Portugues bases a second claim of disparate treatment on the fact that he was not immediately paid his performance bonus on two occasions. He alleged in conclusory terms that he was the only member of upper management who was not paid his performance bonus immediately upon the entry of his sales figure. His conclusory allegation, however, did not square with the deposition testimony of Aponte, a person more senior than Portugues in the BFH hierarchy who stated that he too received his performance bonus late.[14]

■ A third claim for disparate treatment is that another vice president, Somoza, took ideas that Portugues proposed and potential clients that Portugues brought in and passed both over to another BFH employee, Rodriguez. Again, Portugues does not show if similar things did or did not occur to other BFH employees who were similarly situated to him. Neither does he provide the Court with additional facts to enable the Court to evaluate the reasonableness of passing his ideas and potential clients over to Rodriguez.

■ In a fourth claim for disparate treatment, Portugues states that he was not provided with a brand manager to

---

14. Yokotake's also testified that he too received his bonus late.

work for him while Rodriguez, who was herself a brand manager, hired two junior brand managers. This claim fails for a few reasons: first Portugues and Rodriguez were not similarly situated, they were in different divisions of BFH (liquor versus provisions), and Portugues was a director whereas Rodriguez was a brand manager; second, Portugues provides no information concerning the need for a brand manager or the practice concerning brand managers within each division of BFH; third, Portugues stated that he believes that Rodriguez is a member of his same protected class.

Portugues suggests that the denial of a request he submitted to go on a trip to an unspecified convention is a fifth example of disparate treatment. Nonetheless, the only context that Portugues provides for this claim is that an unnamed white person went to the convention. Portugues fails to provide the name and position of the other person who received approval to attend the unspecified convention. This information is necessary to evaluate if there was disparate treatment rather than a simple denial of a request submitted by Portugues. Moreover, BFH adduces evidence that Portugues did in fact attend a convention in Chile, so not all of his requests to travel to conventions were denied.

As a sixth alleged ground for disparate treatment, Portugues states that he was the only director who did not have a laptop computer. This allegation does appear to be an example of disparate treatment, but Portugues does not provide the Court with any reason to view the fact that BFH did not provide Portugues with a laptop as anything other than a minor inconvenience. Portugues had a desktop computer and he does not explain why or how a laptop would have been of significant importance to him in his position.

Portugues's seventh and eighth examples of disparate treatment are more typically viewed in Title VII jurisprudence as independent grounds for raising Title VII claims: the denial of a promotion to either of two vice president positions, and termination from employment. Nonetheless, Portugues asserts that these events (or nonevents in the case of the non promotions) constitute part of the hostile work environment that he faced. Although the Court looks dubiously upon plaintiff's assertion that these singular and independently actionable events somehow formed part of a larger pattern of hostile behavior against Portugues, the Court shall evaluate them here nonetheless. As with nearly all of Portugues's other proffered instances of disparate treatment, these allegations are also lacking in merit. In the case of the non-promotions, Portugues failed to apply for the jobs. He attempts to shoehorn himself into a non-promotion claim by suggesting that BFH created a duty for itself to post job openings on an internal bulletin board because the employee handbook stated that job openings "may" be placed on the bulletin board. This argument is lacking in merit for several reasons: first, the language used by BFH in its employee handbook is conditional, not mandatory; second, the failure to post a job opening on a bulletin board viewable by all employees of BFH cannot *ipse dixit* be construed as aimed at Portugues in particular or at only BFH employees who share Portugues's same protected characteristic; third, Portugues has not shown that BFH deviated from a practice of posting job announcements on the bulletin board in the case of the two contested vice president positions (he merely asserts that BFH is supposed to use the bulletin boards); fourth, Portugues has not shown that he was qualified for the vice president positions. In sum, Po-

rtugues did not apply for the promotions, and he was not barred from applying. The fact that he was not promoted to the positions when they became available is not evidence of a hostile work environment.

■ Lastly, Portugues asserts that his termination by BFH was part of the hostile work environment thrust upon him. As discussed in the preceding section, Portugues was not the only one terminated from employment at BFH. Del Valle, a white individual, was also terminated. Not only that but Yokotake, the former direct supervisor of both Portugues and Del Valle left BFH as well; prior to his leaving BFH he had been switched out of his position in liquor and beer to be vice president of special projects. Thus, if anything, the record shows that Portugues received the same treatment as the two other senior people in the liquor and beer unit of BFH: they were all removed from their positions.[15] Portugues has not shown that his termination from employment was in some way indicative of different treatment on the basis of race.

On the whole, the only proffered evidence of discrimination that survives review by the Court is that Portugues was referred to using racially-related language on two occasions by an unknown person at BFH and that he was the only director level employee not assigned a laptop. This evidence is simply too weak to raise a colorable hostile work environment claim; the acts of which Portugues complains do not indicate that he was subjected to severe or pervasive harassment that materially altered the conditions of his employment. Portugues has not shown that the failure to assign him a laptop unreasonably interfered with his work performance, and he has not shown that race-related comments were anything other than simple teasing, offhand comments and isolated incidents. *See Faragher,* 524 U.S. at 788, 118 S.Ct. 2275; *Harris,* 510 U.S. at 23, 114 S.Ct. 367. Accordingly, the Court rejects Portugues's hostile work environment claim.

### E. Commonwealth law claims

Because no federal claims remain to ground jurisdiction in this case, plaintiff's commonwealth law claims against defendant BFH are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### VI. Conclusion

For the foregoing reasons, the Court **GRANTS** defendant BFH's motion for reconsideration (Docket No. 213) and therefore **VACATES** the Court's order summarily denying summary judgment (Docket No. 209) and instead **GRANTS** BFH's motion for summary judgment (Docket No. 130). The Court hereby **dismisses with prejudice** plaintiff Portugues's Title VII claims. The Court hereby **dismisses without prejudice** plaintiff Portugues's commonwealth law claims.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

---

**15.** Yokotake testified that he resigned from his position although he also mentioned that Teixidor asked "once or maybe twice" when he would be leaving.